**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Melissa Thornley, Deborah Benjamin-Koller, and Josue Herrera, individually and on behalf of all others similarly situated, | |
| Plaintiffs/Counter-Defendants, | No. 1:24-CV-05525 |
| v. | Judge Edmond E. Chang |
| Citizens Insurance Company of America, | |
| Defendant/Counter-Plaintiff. | |

**MEMORANDUM OPINION AND ORDER**

This insurance dispute arises from a class action for privacy violations against Wynndalco Enterprises, LLC in Illinois state court. R. 1, Compl. ¶¶ 7–8.[1] After it was sued, Wynndalco sent a tender for defense and indemnification to Citizens Insurance Company of America. *Id.* ¶¶ 12, 20. Citizens refused coverage and brought a suit in this District seeking a declaratory judgment that it had no duty to defend or indemnify Wynndalco. *Id.* ¶¶ 21, 24. The district court held that Citizens had a duty to defend Wynndalco, and the Seventh Circuit affirmed. *Id.* ¶¶ 26–29. Meanwhile, the parties settled the underlying class action in state court for $20 million. *Id.* ¶ 39.

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number. This Court has diversity jurisdiction over this case under 28 U.S.C. § 1332. Specifically, the three named plaintiffs are all citizens of Illinois, Compl. ¶¶ 3–5, and the proposed class definition is limited to "current Illinois citizens," *id.* ¶ 46. Citizens Insurance Company of America is a Michigan corporation with its principal place of business in Massachusetts. *Id.* ¶ 6. And the amount-in-controversy requirement is met because plaintiffs bring a breach-of-contract claim for $20,050,000. *Id.* ¶¶ 56–57.

Under the settlement, Wynndalco paid $50,000 and assigned its rights to payment under the Citizens insurance policy to the Plaintiffs and the settlement class. *Id.*

The plaintiffs in the underlying class action now bring this case against Citizens, alleging that Citizens breached the insurance contract by refusing to indemnify Wynndalco and to pay the settlement class. Compl. ¶ 57. Citizens moves for judgment on the pleadings. R. 26, Def.'s Mot. for Judgment on Pleadings. The Plaintiffs oppose the motion, cross-move for judgment on the pleadings, and move for partial summary judgment. R. 44, Pls.' Cross-Mot. and Mot. for Partial SJ.

In the course of briefing these motions, Citizens unexpectedly cross-moved for partial summary judgment. R. 51, Def.'s Cross-Mot. for Partial SJ. Because Citizens did not seek leave from the Court to do so, the Plaintiffs moved to strike the cross-motion and its accompanying materials. R. 65, Pls.' Mot. to Strike. The Court granted the motion. R. 69, Order Granting Mot. to Strike. Now Citizens also moves to reconsider that order. R. 70, Def.'s Mot. to Reconsider. On re-examination, the Court concludes that Sections III.C.1 and III.C.3 of Citizens's brief are relevant to its motion for judgment on the pleadings (not the unexpected cross-motion for partial summary judgment) and thus should not have been struck. So the Court grants Citizens's motion to reconsider with respect to those sections. But Citizens's cross-motion, statement of facts, and the *other* sections of its brief supporting solely the unauthorized cross-motion remain struck.

The parties' remaining motions are denied. Because Citizens's declaratory-judgment suit adjudged its duty to defend Wynndalco, whereas this suit turns on

2

Citizens's duty to indemnify, the two cases do not present the same cause of action, and claim preclusion does not apply. The Plaintiffs' motion for partial summary judgment is thus denied. The policy exclusion on which Citizens relies for judgment on the pleadings—which the parties call the Access or Disclosure Exclusion—applies to the underlying class-action suit, so the Plaintiffs' cross-motion for judgment on the pleadings is denied. But there are genuine disputes of fact material to the Plaintiffs' mend-the-hold and waiver arguments, which may prevent Citizens from raising the exclusion, so Citizens's motion for judgment on the pleadings is also denied.

## I. Background

The parties do not dispute the following facts. In the underlying class action suit, the plaintiffs there alleged that Wynndalco purchased and sold a database and software technology created by Clearview AI, Inc. that contained biometric data of Illinois residents. Compl. ¶ 8. Specifically, according to the plaintiffs, Clearview is an artificial intelligence company that created a database of facial scans and an application that allows users to identify individuals based on those scans. R. 1-3, Exh. B, First Am. Compl. in Underlying Suit ¶¶ 9–10. The plaintiffs alleged that Clearview added their facial scans—and those of millions of other Illinois residents—to its database and application by downloading their photographs from social media sites. *Id.* ¶¶ 12–16. The plaintiffs also alleged that the Chicago Policy Department wanted to purchase the Clearview product but could not do so directly because Clearview was not an authorized vendor. *Id.* ¶ 21. So Wynndalco, operating as a middleman, allegedly purchased the product from Clearview and sold it at a small profit to another

company, which then sold the product to the Chicago Police Department. *Id.* ¶¶ 26–35.

Based on these allegations, the plaintiffs in the underlying suit brought claims for violations of Section 15(c) of the Illinois Biometric Information Privacy Act (commonly referred to as BIPA), 740 ILCS 14/1 *et seq.*; invasion of privacy; and unjust enrichment. First Am. Compl. in Underlying Suit ¶¶ 67–81. The plaintiffs brought both individual claims and class-action claims on behalf of current Illinois citizens whose biometric information was included in the Clearview product purchased and sold by Wynndalco. *Id.* ¶ 44.

When the plaintiffs filed the underlying suit, Wynndalco was insured by Citizens. Compl. ¶ 12. Under the insurance policy, Citizens agreed to defend and indemnify Wynndalco for any damages it became legally obligated to pay for "personal and advertising injury," defined as "injury, including consequential 'bodily injury,' arising out of … [o]ral or written publication, in any manner, of material that violates a person's right to privacy." *Id.* ¶¶ 14–15; R. 1-2, Exh. A, Ins. Policy at 59, 76.[2] Wynndalco informed Citizens of the underlying suit and demanded a defense and indemnification. Compl. ¶ 20.

Citizens refused. Compl. ¶ 21–22. It brought a suit against Wynndalco and the class-action plaintiffs in this District seeking a declaratory judgment that it had no duty to defend or indemnify Wynndalco in the underlying class-action suit. *Id.* ¶ 23.

---

[2]Citations to the insurance policy are to the page numbers found in the principal policy, which spans pages 25–105 of the PDF for Exhibit A.

Wynndalco and the plaintiffs counterclaimed for a declaratory judgment. *Id.* ¶ 25. The parties then cross-moved for judgment on the pleadings. *Id.* Citizens relied solely on an exclusion in the insurance policy for the distribution of material in violation of statutes (which the Court will call the Statutory Violations Exclusion). *Id.* ¶ 24. The district court ruled in favor of Wynndalco and plaintiffs, holding that Citizens had a duty to defend Wynndalco because the exclusion was ambiguous and thus unenforceable. *Id.* ¶¶ 26–27; R. 1-4, Exh. C, Am. Judgment. Citizens appealed, and the Seventh Circuit affirmed the district court's decision. Compl. ¶¶ 28–29.

While Citizens's declaratory-judgment suit was pending, the underlying-suit plaintiffs and Wynndalco reached a settlement. Compl. ¶ 39. Under the settlement, Wynndalco agreed to the certification of a settlement class and a settlement amount of $20 million. *Id.*; R. 1-6, Exh. E, Settlement at 9. To satisfy the settlement, Wynndalco paid the plaintiffs and the settlement class just $50,000, and then assigned its rights to payment under the Citizens insurance policy (and another insurance policy it held) to the plaintiffs and the settlement class. Compl. ¶ 39; Settlement at 9; R. 1-8, Exh. G, Assignment. The state court preliminarily approved the settlement agreement. Compl. ¶ 42; R. 1-7, Exh. F, Preliminary Approval Order.

Now the Plaintiffs here bring this insurance suit against Citizens on behalf of the settlement class in the underlying suit. Compl. ¶ 46. As assignees of Wynndalco's rights under the insurance policy, the Plaintiffs assert that Citizens breached its contract with Wynndalco by refusing to pay Wynndalco's defense costs or indemnify Wynndalco for the outstanding settlement amount in the underlying suit. *Id.* ¶¶ 54–

5

59. Citizens counterclaims for declaratory judgment, asserting a variety of reasons why it has no duty to indemnify Wynndalco. R. 13, Def.'s Counterclaim ¶¶ 18–62.

## II. Legal Standard

The parties have moved for both judgment on the pleadings and partial summary judgment. *See* Def.'s Mot. for Judgment on Pleadings; Pls.' Cross-Mot. and Mot. for Partial SJ. A party may move for judgment on the pleadings after the pleadings are closed. Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *Hayes v. City of Chicago*, 670 F.3d 810, 813 (7th Cir. 2012). In ruling on a motion for judgment on the pleadings, the Court must accept all well-pleaded allegations as true and view the alleged facts in the light most favorable to the non-moving party. *Id.* So when the Court evaluates Citizens's motion, the Plaintiffs get the benefit of reasonable inferences; conversely, when evaluating the Plaintiffs' motion, the Court gives Citizens the benefit of the doubt. Judgment on the pleadings is proper if it appears beyond doubt that the non-moving party cannot prove any set of facts sufficient to support his claim for relief. *Id.* In ruling on a motion for judgment on the pleadings, the Court considers the pleadings alone, which consist of the complaint, the answer, and any documents attached as exhibits. *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998).

In contrast, when ruling on a motion for summary judgment, the Court considers materials outside the pleadings. *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020). Summary judgment must be granted "if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### III. Analysis

First up for decision is Citizens's motion to reconsider, R. 70. The Court then addresses the Plaintiffs' motion for partial summary judgment and the parties' cross-motions for judgment on the pleadings. R. 26; R. 44.

## A. Motion to Reconsider

Federal Rule of Civil Procedure 54(b) states that a court may reconsider an interlocutory ruling "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed R. Civ. P. 54(b). Motions for reconsideration serve the narrow purpose of correcting manifest errors of law or fact or presenting newly discovered evidence. *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987). Thus, a motion to reconsider is proper when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (cleaned up).[3] But a motion for reconsideration "is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996); *see also Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000) (highlighting that motion to alter or amend a judgment under Rule 59(e), which also requires a showing of manifest error of law or fact or new evidence, "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow

---

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

8

a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment" (cleaned up)).

To set the stage, it is necessary to summarize the parties' motions and briefing leading up to the reconsideration motion. After the parties filed their pleadings, Citizens moved for judgment on the pleadings. Def.'s Mot. for Judgment on Pleadings. Citizens's only ground for the motion is that the Access or Disclosure Exclusion precludes coverage of the underlying class-action suit. R. 27, Def.'s Br. at 1. The Plaintiffs received leave from the Court to file an over-sized brief covering three things: a response to Citizens's motion for judgment on the pleadings; the Plaintiffs' cross-motion for judgment on the pleadings; and the Plaintiffs' motion for partial summary judgment. R. 31, Pls.' Mot. for Leave to File Over-Sized Br.; R. 33, Order Granting Leave to File Over-Sized Br. In the combined brief, the Plaintiffs seek summary judgment on the issue of indemnification because, in their view, Citizens is precluded—based on the declaratory-judgment lawsuit—from raising any defenses to indemnification, including the Access or Disclosure Exclusion. R. 45, Pls.' Br. at 5–9. Additionally, the Plaintiffs contend that partial summary judgment is appropriate because Citizens must pay Wynndalco's defense costs stemming from the underlying suit. *Id.* at 25. The Plaintiffs also present alternative arguments on the cross-motions for judgment on the pleadings, including that the mend-the-hold and waiver doctrines prevent Citizens from raising the Access or Disclosure Exclusion. *Id.* at 9–24.

In response, and without notice to or leave from the Court, Citizens filed a cross-motion for partial summary. Def.'s Cross-Mot for Partial SJ. In support of its

9

cross-motion, Citizens filed a Rule 56 Statement of Facts, R. 52, Def.'s SOF, and a brief that addressed each of the parties' motions, R. 53, Def.'s Reply Br. Citizens's brief addresses a variety of issues related to indemnification, including whether the underlying class action is covered by the insurance policy and whether the class settlement is reasonable. *See* Def.'s Reply Br. at 4–11, 25.

The Plaintiffs moved to strike Citizens's cross-motion and supporting materials, arguing that the cross-motion was filed without leave of the Court. Pls.' Mot. to Strike at 1–2. A first, the Court granted the motion and struck Citizens's cross-motion for partial summary judgment, statement of facts, and most of its brief (except Sections III.C.2 and III.E, which expressly respond to plaintiffs' motion for partial summary judgment). Order Granting Mot. to Strike.

Citizens now moves to reconsider this order. Def.'s Mot. to Reconsider. It argues that striking the brief was based on the mistaken premise that the Plaintiffs' partial summary judgment motion raises only claim preclusion as to the Access or Disclosure Exclusion. *Id.* ¶ 4. Instead, Citizens contends that the Plaintiffs move more broadly for summary judgment as to Citizens's duty to indemnify. *Id.* ¶ 5. Citizens thus argues that it had to cross-move on partial summary judgment and raise other issues in its brief related to the duty to indemnify. *Id.* ¶ 20.

But the Court did not commit a manifest error by striking Citizens's cross-motion and supporting materials. First, it was well within the Court's discretion to

determine that Citizens could not—belatedly and without leave of the Court[4]—file a cross-motion for summary judgment simply because the grounds for the Plaintiffs' motion for partial summary judgment are broader than Citizens expected. *See Cleveland v. Porca Co.*, 38 F.3d 289, 297 (7th Cir. 1994) ("[I]t is within the district court's discretion to strike an unauthorized filing."); *see also Baier v. Rohr-Mont Motors, Inc.*, 175 F. Supp. 3d 1000, 1017–18 (N.D Ill. 2016) (striking brief that was not authorized in briefing schedule and filed without leave of the Court).[5]

Second, because the Court struck the cross-motion, it properly limited Citizens's brief to arguments supporting its motion for judgment on the pleadings and responding to the Plaintiffs' motion for partial summary judgment. Citizens contends that several of the struck sections of its brief—like Sections III.B and III.D—were proper responses to the Plaintiffs' summary-judgment motion because they raise issues related to indemnification. Def.'s Reply Br. on Mot. to Reconsider at 4–6. True, the Plaintiffs move broadly for partial summary judgment on the duty to indemnify. *See* R. 73, Pls.' Resp. Br. on Mot. to Reconsider at 5–6. But the only ground on which the Plaintiffs rely is claim preclusion. For example, the Plaintiffs do not argue that

---

[4]Citizens contends it did not violate a case-management order by filing its cross-motion. R. 74, Def.'s Reply Br. on Mot. to Reconsider at 5–6. But when the Plaintiffs moved to file an oversized brief and the Court set a briefing schedule on the various motions, Citizens should have requested leave to cross-move for partial summary judgment. *See* Pls.' Mot. for Leave to File Over-Sized Br.; Order Granting Leave to File Over-Sized Br.

[5]Citizens argues that it had to cross-move because the Plaintiffs sought summary judgment without proving all the necessary elements for indemnification under Illinois law. Def.'s Mot. to Reconsider ¶¶ 8–9. But a cross-motion is not required to make this point. Citizens could have simply opposed summary judgment because the Plaintiffs supposedly did not meet their burden to prove the duty to indemnify.

summary judgment is warranted because the underlying class settlement is reasonable; they merely argue that Citizens is precluded from contesting that issue because it did not do so in the declaratory-judgment suit. *See* Pls.' Br. at 5–9. Citizens argues that the Plaintiffs' motion raises issues beyond claim preclusion, but it points to sections of the Plaintiffs' brief that only support its motion for judgment on the pleadings, not summary judgment. *See* Def.'s Mot. to Reconsider ¶¶ 10–12. Because Citizens's briefing on the merits of indemnification goes beyond responding to the claim-preclusion grounds for the Plaintiffs' summary judgment motion, those Sections were properly struck. *See* Order Granting Mot. to Strike (striking Sections III.B and III.D).

Citizens alternatively argues that the Court should not have struck Sections III.C.1 and III.C.3 of its brief because those sections support its motion for judgment on the pleadings, not its cross-motion. Def.'s Mot. to Reconsider ¶¶ 13–15. On this point, the Court agrees. In Section III.C.1, Citizens discusses the Access or Disclosure Exclusion, which is the basis for its motion for judgment on the pleadings. Def.'s Reply Br. at 11–14. And in Section III.C.3, Citizens responds to plaintiffs' mend-the-hold and waiver arguments, which the Plaintiffs raise in opposition to Citizens's motion for judgment on the pleadings. *Id.* at 19–24. Thus, on reexamination, those sections are properly construed as a reply brief in support of Citizens's motion for judgment on the pleadings and should not have been struck. But because these sections can only support Citizens's motion for judgment on the pleadings, to the extent that those sections raise factual arguments outside the pleadings, the Court will not consider them. *See N. Ind. Gun & Outdoor Shows*, 163 F.3d at 452.

In sum, the Court grants Citizens's motion to reconsider in part by reinstating Sections III.C.1 and III.C.3 of its brief. But the Court denies the motion with regard to Citizens's cross-motion for partial summary judgment, statement of facts, and Sections III.B and III.D of its brief. Because the Court did not commit an error by striking those materials, they remain inoperative.

## B. Plaintiffs' Motion for Partial Summary Judgment

The Court now considers the Plaintiffs' motion for partial summary judgment, R. 44. The Plaintiffs argue that summary judgment should be entered in their favor on Citizens's duty to indemnify because claim preclusion prevents Citizens from raising any defenses to indemnification. Pls.' Br. at 5–9. The Plaintiffs also ask the Court to enter summary judgment in their favor by requiring Citizens to reimburse the Plaintiffs for defense costs in the underlying class action pursuant to the district court's declaratory judgment order in the prior suit. *Id.* at 25. The Court addresses each issue in turn.

### 1. Claim Preclusion

Because the Plaintiffs' claim-preclusion argument relies on Citizens's declaratory-judgment action, which "was rendered as an exercise of a federal court's diversity jurisdiction over state-law claims," Illinois law governs. *H.A.L. NY Holdings, LLC v. Guinan*, 958 F.3d 627, 632 (7th Cir. 2020). In Illinois, claim preclusion "bars a subsequent action if three requirements are met: (1) there was a final judgment on the merits rendered by a court of competent jurisdiction; (2) there is an identity of cause of action; and (3) there is an identity of parties or their privies." *Whitaker v. Ameritech*

*Corp.*, 129 F.3d 952, 956 (7th Cir. 1997) (cleaned up). Claim preclusion "extends to all questions actually decided in a previous action as well as to all grounds of recovery and defenses which might have been presented in the prior litigation." *Id.*

The threshold issue in this case is whether, in the declaratory-judgment suit, the district court rendered a final judgment on the merits of Citizens's duty to *indemnify* Wynndalco. The Plaintiffs assert that the district court did so. Pls.' Br. at 6. They point to the district court's amended judgment, which "Ordered that judgment shall enter … against Citizens on Count[] One … of Citizens' First Amended Complaint seeking declaratory relief." R. 54, Def.'s Resp. to PSOF ¶ 16; Am. Judgment at 2. In Count One, Citizens sought a declaratory judgment that "Citizens has no duty to defend *or indemnify* Wynndalco in connection with the" underlying class-action suit. Def.'s Resp. to PSOF ¶ 7; R. 46-3, Exh. 3, Citizens's First Am. Compl. in Declaratory-Judgment Suit at 8 (emphasis added). The Plaintiffs thus argue that the district court rendered a final judgment in their favor on Citizens's duty to indemnify, precluding Citizens from raising any defenses to indemnification in this case. Pls.' Br. at 6.

Citizens's primary response is that the district court could not decide indemnification because that issue was not yet ripe during the declaratory-judgment suit. Def.'s Reply Br. at 14–19. That is not right.[6] An insurer's duty to indemnify becomes

---

[6]The parties point to Illinois law on ripeness. *See* Def.'s Reply Br. at 16; R. 63, Pls.' Reply Br. at 7. But "[w]hether a dispute has reached the stage at which a declaratory judgment under 28 U.S.C. § 2201 is appropriate is a question of federal practice." *Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003). In any event, Illinois and federal law on ripeness are the same in this context. *Compare id.* (holding that indemnity becomes ripe when the insured's liability is established), *with Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1221 (Ill. 1992) ("[T]he question of whether the insurer

ripe when liability against the insured is established. *Med. Assurance Co. v. Hellman*, 610 F.3d 371, 375 (7th Cir. 2010). Here, the parties settled the underlying class-action suit in February 2021, R. 13, Def.'s Answer ¶ 39, and the Illinois court preliminarily approved the settlement in April 2021, *id.* ¶ 42; Preliminary Approval Order. The duty-to-indemnify issue then became ripe. *See Guillen ex rel. Guillen v. Potomac Ins. Co. of Ill.*, 751 N.E.2d 104, 114 (Ill. App. Ct. 2001) (describing how the duty to indemnify ripens when the parties reach a settlement). At that time, the declaratory-judgment suit was still pending; the district did not issue its opinion until March 2022. Def.'s Resp. to PSOF ¶ 14; Def.'s Answer ¶ 25; *see Citizens Ins. Co. of Am. v. Wynndalco Enters., LLC*, 595 F. Supp. 3d 668 (N.D. Ill. 2022). Because the duty to indemnify ripened during the declaratory-judgment suit, Citizens could have raised and litigated the issue. Its ripeness argument is thus rejected.

Still, on closer examination of the district court's amended judgment in the declaratory-judgment suit, the Court concludes that the district court did *not* issue a final decision regarding Citizens's duty to indemnify. The district court expressly issued a declaratory judgment about Citizens's duty to *defend* Wynndalco, adjudging that the Statutory Violations Exclusion "does not bar coverage under the Policy for the claims asserted against Wynndalco" and that Citizens thus "has a duty pursuant to the Policy to defend Wynndalco." Def.'s Resp. to PSOF ¶ 15; Am. Judgment at 1–

---

has a duty to indemnify the insured for a particular liability is only ripe for consideration if the insured has already incurred liability in the underlying claim against it.").

2. But that is the only declaratory relief the court issued. Nowhere in its judgment did the district court declare the parties' rights regarding the duty to indemnify. Indeed, in the district court's opinion, it expressly declined to address the duty to indemnify. *See Wynndalco*, 595 F. Supp. 3d at 676 n.4.

The mere fact that the district court entered judgment in the Plaintiffs' favor by referring broadly to Count One is insufficient. *See Greenhill v. Vartanian*, 917 F.3d 984, 987 (7th Cir. 2019) (holding that a "document providing that 'judgment is entered' does not satisfy Rule 58" or "resolve the parties' dispute" (cleaned up)). "A judgment must provide the relief to which a prevailing party is entitled." *Phila. Indem. Ins. Co. v. Chi. Tr. Co.*, 930 F.3d 910, 912 (7th Cir. 2019). Because the judgment does not specifically declare each party's rights and relief regarding the duty to *indemnify*, it cannot be considered a final judgment on the merits of the duty-to-indemnify dispute.[7]

And as Citizens points out, the duty to indemnify is not the same "cause of action" as the duty to defend, which the district court's judgment did address. Def.'s Reply Br. at 15–18. Illinois courts apply a "transactional" test to determine whether suits contained identical causes of action. *Corcoran-Hakala v. Dowd*, 840 N.E.2d 286, 290 (Ill. App. Ct. 2005). "Under this test, separate claims will be considered the same

---

[7]The Court notes that the parties introduced this defect by proposing the amended judgment, *Citizens Ins. Co. of Am. v. Wynndalco Enterps., LLC*, No. 1:20-cv-03873, R. 118-1, Exh. A, Proposed Am. Judgment, which the district court adopted verbatim, Am. Judgment.

16

cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *Id.*

The duty to defend and duty to indemnify do not arise from a single group of operative facts. The operative facts underlying a duty-to-defend dispute are more limited than what is relevant to decide the duty to indemnify. Under Illinois law, "in determining whether an insurer has a duty to defend its insured, the court must look to the allegations in the underlying complaint and compare these allegations to the relevant coverage provisions of the insurance policy." *Crum & Forster Managers Corp. v. Resol. Tr. Corp.*, 620 N.E.2d 1073, 1079 (Ill. 1993). "[T]he duty to defend is broader than the duty to indemnify and arises even if the facts alleged in the underlying complaint fall potentially within the policy's coverage." *Id.* at 1081. In contrast, "[t]he duty to indemnify arises only if the facts alleged *actually* fall within coverage." *Id.* (emphasis in original). So to determine whether an insurer has a duty to indemnify, the Court looks at the allegations in the settlement—rather than the complaint—in the underlying suit. *See id.*; *see also Outboard Marine*, 607 N.E.2d at 1221–22 (comparing the parties' consent decree to the insurance policy to determine the duty to indemnify). Additionally, the Court must also examine whether the underlying settlement is reasonable before it can declare the insurer has a duty to indemnify. *See Guillen*, 751 N.E.2d at 115.

Because the district court did not reach Citizens's duty to indemnify in the declaratory-judgment suit, it did not consider these materials or facts. The district court considered only the allegations in the complaint. *See Wynndalco*, 595 F. Supp.

17

3d at 672–73. In contrast, here the Court must examine the allegations in the settlement and must assess the reasonableness of the settlement to determine whether Citizens owes a duty to indemnify. Because the duty to defend and indemnify involve a different set of operative facts, they do not constitute the same cause of action for claim-preclusion purposes. *Cf. Pekin Ins. Co. v. St. Paul Lutheran Church*, 78 N.E.3d 941, 956 (Ill. App. Ct. 2017) (describing how the dismissal of a claim as unripe does not pose claim-preclusion problems because a subsequent suit would allege a different set of operative facts that render the claim ripe).

The Plaintiffs argue that even if Citizens did not raise the relevant facts for indemnification in the prior suit, Citizens *could* have done so because those facts (that is, the settlement) arose while the declaratory-judgment suit was still ongoing. Pls.' Reply Br. at 8–9. But parties are only precluded from raising facts in a second suit that developed during the first suit when those facts are connected to the *same transaction* adjudicated in the first suit. *See Nationwide Mut. Ins. Co. v. Srachta*, 236 N.E.3d 1003, 1015 (Ill. App. Ct. 2023). And again, the set of facts underlying the duty to indemnify are different from the facts underlying the duty to defend, so they are not connected to the same transaction. Thus, although the facts relevant to indemnification arose during the declaratory-action suit, Citizens was not required to raise the issue and is not precluded from doing so now.

Finally, plaintiffs contend that a holding that Citizens has no duty to indemnify Wynndalco would contradict the district court's declaratory judgment that Citizens has a duty to defend Wynndalco, which is supposedly forbidden under claim

18

preclusion. Pls.' Br. at 9. But because the duty to defend is broader than the duty to indemnify, an insurer can have a duty to defend the insured but yet owe no duty to indemnify. *Crum & Forster*, 620 N.E.2d at 1079; *Certain Underwriters at Lloyd's, London v. Boeing Co.*, 895 N.E.2d 940, 954 (Ill. App. Ct. 2008). There is thus no risk that a decision in this case on Citizens's duty to indemnify may contradict the district court's declaratory judgment.

Ultimately, then, although the duty-to-indemnify issue ripened while the de-claratory-judgment suit was ongoing, the district court did not issue a final judgment on the merits of indemnification. Instead, the district court decided only Citizens's duty to defend, which is not the same cause of action as the duty to indemnify.[8] Thus, claim preclusion does not apply, and the Plaintiffs' motion for partial summary judgment on Citizens's duty to indemnify is denied.

### 2. Defense Costs

The Plaintiffs also request a judgment ordering Citizens to reimburse it for defense costs in the underlying class action. Pls.' Br. at 25. Citizens correctly points out that the district court already declared it has a duty to defend Wynndalco. Def.'s Reply Br. at 25. And the parties agree that they have not yet conducted discovery to determine the exact amount of the defense costs. *See* Pls.' Br. at 25; Def.'s Reply Br. at 25. The Plaintiffs' request is thus terminated without prejudice. If the Plaintiffs

---

[8]Although the Plaintiffs also raise *issue* preclusion in their amended affirmative defenses to Citizens's counterclaims, R. 43, Pls.' Am. Aff. Defenses ¶ 1, the Plaintiffs do not meaningfully discuss that doctrine in their summary-judgment briefing. It is thus waived for purposes of this motion. *See Argyropoulos v. City of Alton*, 539 F.3d 724, 739 (7th Cir. 2008).

want to reduce the defense costs to a precise dollar amount, then at the appropriate time—after discovery and conferral between the parties—they can move for summary judgment on this issue.

## C. Cross-Motions for Judgment on the Pleadings

Because claim preclusion does not prevent Citizens from raising defenses to its duty to indemnify, the Court next addresses the parties' cross-motions for judgment on the pleadings. Citizens moves for judgment on the pleadings based on the Access or Disclosure Exclusion, arguing that the exclusion precludes coverage of the underlying class-action suit. Def.'s Br. at 2. The Plaintiffs cross-move, arguing that the exclusion does not apply. Pls.' Br. at 11–17. And the Plaintiffs argue (in the alternative) that even if the exclusion applies, judgment on the pleadings is inappropriate because there are genuine disputes of fact material to the mend-the-hold and waiver doctrines, which would preclude Citizens from relying on the exclusion. *Id.* at 18–24.

### 1. Access or Disclosure Exclusion

First, the Court addresses whether the Access or Disclosure Exclusion applies to the underlying class action. The parties assume that Illinois law governs the interpretation of the insurance policy, *see* Def.'s Br. at 7–8 (applying Illinois law); Pls.' Br. at 16–7 (same), and the Court agrees, *see Nat'l Am. Ins. Co. v. Artisan & Truckers Cas. Co.*, 796 F.3d 717, 723 (7th Cir. 2015). Under Illinois law, "an insured is only entitled to indemnity for losses that actually fall within the terms of the insurance policy." *Santa's Best Craft, L.L.C. v. Zurich Am. Ins. Co.*, 941 N.E.2d 291, 301 (Ill. App. Ct. 2010). "When an insured settles an underlying claim, it must show that the

20

settlement was made in reasonable anticipation of liability for an otherwise covered loss." *Rosalind Franklin Univ. of Med. & Sci. v. Lexington Ins. Co.*, 8 N.E.3d 20, 39 (Ill. App. Ct. 2014). "Where the words used in the policy are clear and unambiguous, [the Court] afford[s] them their plain, ordinary, and popular meaning." *Santa's Best Craft*, 941 N.E.2d at 301.

As a reminder, Wynndalco's insurance policy with Citizens covers "[p]ersonal and advertising injury," defined as "injury … arising out of … [o]ral or written publication, in any manner, of material that violates a person's right of privacy." Ins. Policy at 76. But the Access or Disclosure Exclusion precludes coverage for "[d]amages arising out of … [a]ny access to or disclosure of any person's or organization's *confidential or personal information*, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information." *Id.* at 68 (emphasis added). Citizens argues that the Access or Disclosure Exclusion applies to the underlying class-action settlement because the Plaintiffs alleged that Wynndalco accessed and disclosed their personal biometric information through its purchase and sale of the Clearview product. Def.'s Br. at 9–12.

The Seventh Circuit's recent decision in *Thermoflex Waukegan, LLC v. Mitsui Sumitomo Insurance USA, Inc.*, 102 F.4th 438 (7th Cir. 2024), squarely decides this issue. There, the employees alleged that their employer violated BIPA by collecting their biometric information—their handprints—without their consent and disclosing it to a third-party for processing. *Id.* at 440. The Seventh Circuit held that a virtually

identical exclusion applied to the employees' BIPA claim because "the ordinary understanding of 'confidential or personal information' includes handprints and other biometric identifiers …." *Id.*; *see also Citizens Ins. Co. of Am. v. Mullins Food Prods., Inc.*, 135 F.4th 1082, 1091 (7th Cir. 2025) (reaffirming after *Mitsui* that the Access or Disclosure Exclusion applies to BIPA claims). Similarly, here, the plaintiffs in the underlying class-action settlement alleged that Wynndalco purchased (or accessed) and sold (or disclosed) their biometric information in violation of BIPA. First Am. Compl. in Underlying Suit ¶¶ 8, 28. Thus, under *Mitsui*, the Access or Disclosure Exclusion precludes coverage.

The Plaintiffs' attempts to distinguish this case from *Mitsui* are unpersuasive. They contend that their allegation was that Wynndalco *profited* from their biometric information, rather than *accessed or disclosed* it. Pls.' Br. at 12–14. They note that the underlying class-action settlement alleged that Wynndalco violated Section 15(c) of BIPA—which prohibits profiting from a person's biometric information—whereas the *Mitsui* plaintiffs alleged violations of other BIPA sections that prohibit accessing or disclosing a person's biometric information. *Id.* at 13; *see* 740 ILCS 14/15(b)–(d). But the Plaintiffs' argument elides the fact that Wynndalco profited from plaintiffs' biometric information by buying it from Clearview and selling it to another organization. *See* First Am. Compl. in Underlying Suit ¶¶ 8, 28, 35. Buying and selling information entails accessing and disclosing it. So although it may be theoretically possible for a defendant to profit from biometric information without accessing or

disclosing it, rendering the Access or Disclosure Exclusion inapplicable, that is not the case here.[9]

The Plaintiffs' proximate causation argument fails for similar reasons. The Plaintiffs contend that, even if the Court concludes that there were two proximate causes to their injury—that is, that Wynndalco both profited from, and accessed and disclosed, their biometric information—the underlying suit is still covered by the insurance policy because one of those causes falls outside the Access or Disclosure Exception. Pls.' Br. at 16–17. But the case on which the Plaintiffs rely involved two independent proximate causes of the plaintiff's injury. *See Nationwide Prop. & Cas. Ins. Co. v. State Farm Fire & Cas. Co.*, 208 N.E.3d 1106, 1114–15 (Ill. App. Ct. 2022). Here, in contrast, Wynndalco's profit could not be reaped without its access and disclosure, triggering the exclusion. The Access or Disclosure Exclusion thus applies to the underlying class-action suit.[10]

---

[9]The Plaintiffs also argue that the exclusion here, which precludes *damages* based on the access or disclosure of personal information, is distinct from the exclusion in *Mitsui*, which precluded *claims* based on the same. Pls.' Br. at 12–13. This is a distinction without a difference. The Plaintiffs' alleged damages are based on Wynndalco's profit from their biometric information, and Wynndalco only profited because it accessed and disclosed that information, so the exclusion applies. *See* First Am. Compl. in Underlying Suit ¶¶ 8, 28, 35.

[10]Citizens alternatively argues that if the allegations against Wynndalco do not involve disclosure of confidential or personal information, avoiding the Access or Disclosure Exclusion, then the settlement is not covered by the insurance policy at all. Def.'s Reply Br. at 11–14. The insurance policy covers injury arising from the "*publication* … of material that violates a person's right of privacy." Ins. Policy at 76 (emphasis added). Citizens contends that disclosure of material is the same as its publication. Def.'s Reply Br. at 11–14. There is some force to this argument, but because Citizens did not raise this argument in its opening brief supporting its motion for judgment on the pleadings, *see generally* Def.'s Br., the Court does not opine on it further.

## 2. Mend the Hold and Waiver

Because the Access or Disclosure Exclusion applies to the underlying class-action suit, the Plaintiffs' cross-motion for judgment on the pleadings is denied. But in the alternative, the Plaintiffs oppose Citizens's motion for judgment on the pleadings by invoking the mend-the-hold and waiver doctrines. Pls.' Br. at 18–24. Both doctrines are governed by Illinois law. *See Horwitz-Matthews, Inc. v. City of Chicago*, 78 F.3d 1248, 1251–52 (7th Cir. 1996); *see also Title Indus. Assurance Co., R.R.G. v. First Am. Title Ins. Co.*, 853 F.3d 876, 885 (7th Cir. 2017). And either doctrine, if applicable, would bar Citizens from relying on the Access or Disclosure Exclusion to deny its duty to indemnify Wynndalco. *See Title Indus.*, 853 F.3d at 885.

The Court addresses mend the hold and waiver, respectively, and concludes that there are genuine disputes of fact relevant to both doctrines. Thus, judgment on the pleadings is inappropriate. *See Coyle Mech. Supply*, 983 F.3d at 313. The parties must move forward with discovery on these issues.

### a. Mend the Hold

The mend-the-hold doctrine "precludes insurers from denying a claim on one basis and then changing the basis for denial during litigation if there is evidence of unfair surprise or arbitrariness." *Title Indus.*, 853 F.3d at 885 (cleaned up). "[T]he doctrine … can be seen as a corollary of the duty of good faith that the law of Illinois … imposes on the parties to contracts." *Harbor Ins. Co. v. Cont'l Bank Corp.*, 922 F.2d 357, 363 (7th Cir. 1990). "A party who hokes up a phony defense to the performance of his contractual duties and then when that defense fails (at some expense to

24

the other party) tries on another defense for size can properly be said to be acting in bad faith." *Id.* To establish mend the hold, the Plaintiffs must demonstrate that (1) Citizens changed the basis for its denial of coverage during litigation, and (2) the Plaintiffs experienced prejudice as a result. *See Title Indus.*, 853 F.3d at 885; *see also Trossman v. Philipsborn*, 869 N.E.2d 1147, 1164 (Ill. App. Ct. 2007) (describing how mend the hold requires a showing a prejudice).

The Plaintiffs raise several issues of fact material to the mend-the-hold doctrine. First, Citizens changed the basis for its denial of coverage between the declaratory-judgment suit and this case. Pls.' Br. at 19–21. In its initial coverage position letters to Wynndalco, Citizens did not mention the Access or Disclosure Exclusion. *See generally* R. 46-1, Exh. 1, July and August 2020 Coverage Letters. And in the declaratory-judgment suit, Citizens relied solely on the Statutory Violations Exclusion in its complaint and motion for judgment on the pleadings. Citizens's First Am. Compl. in Declaratory-Judgment Suit ¶¶ 35–41. But that argument failed: both the district court and the Seventh Circuit rejected it in the context of the duty to defend. *Wynndalco*, 595 F. Supp. 3d at 676; *Citizens Ins. Co. of Am. v. Wynndalco Enters., LLC*, 70 F.4th 987, 1004–05 (7th Cir. 2023). So Citizens changed tack, asserting the Access or Disclosure Exclusion in this suit. Def.'s Mot. for Judgment on Pleadings.

What's more, the Plaintiffs raise a plausible inference that Citizens changed strategy not for a good-faith reason, such as the acquisition of new factual information, but because the courts "threw cold water on" its initial defense. *Harbor Ins.*, 922 F.2d at 364–65. Internal analysis from Citizens's agents in the period before

25

Citizens filed for declaratory judgment explains how the Access or Disclosure Exclusion likely precluded coverage of the underlying class-action suit. *See generally* R. 46-3, Exh. 3, June 9, 2020, Coverage Analysis. This evidence suggests that Citizens was aware all along that the Access or Disclosure Exclusion could apply, but chose not to rely on the exclusion until its original defense failed.

Citizens contends that it is reasonable now to assert the Access or Disclosure Exclusion based on *Mitsui*. Def.'s Reply Br. at 21. But Illinois law makes clear that new legal authority—as compared to new factual developments or evidence in a case—does not provide a good-faith reason for an insurer's change in strategy. *See Harbor Ins.*, 922 F.2d at 365 (rejecting this argument because the insurer "did not change their position on the basis of further inquiry through pretrial discovery or otherwise but only because" new legal authority shed light on their position). At most, this raises an issue of fact for a jury to resolve.

Citizens also argues that it did not change strategy, but merely asserted different defenses against the duty to defend (in the declaratory-judgment suit) and the duty to indemnify (in this suit). Def.'s Reply Br. at 20–21. But mend the hold is a flexible doctrine that applies broadly to an insurer's *coverage position* throughout litigation. *See Harbor Ins.*, 922 F.2d at 364–65 ("[W]here a party gives a reason for his … decision touching any thing involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and different consideration." (cleaned up)); *see also Est. of Burford v. Acct. Prac. Sales, Inc.*, 851 F.3d 641, 644 (7th Cir. 2017). And even though defense and indemnification are

different duties, Citizens took a consistent coverage position against both duties at the outset of litigation. *See* July and August 2020 Coverage Letters. So mend the hold may prevent Citizens from shifting its coverage position between its litigation of the duty to defend and the duty to indemnify.

Second, the Plaintiffs present evidence that Citizens's change in strategy caused them prejudice. Pls.' Br. at 21–22. Most significantly, the Plaintiffs contend that Citizens's piecemeal assertion of policy exclusions has created delays and additional expenses for Wynndalco and the Plaintiffs. *Id.* at 21. For instance, Wynndalco allegedly spent over $135,000 litigating the declaratory-judgment suit, and the Plaintiffs bore additional costs defending the district court's decision on appeal. R. 46-1, Exh. 1, Andalcio Decl. ¶ 8. Now the Plaintiffs must spend additional time and money litigating an exclusion that could have been raised in the prior suit. The Plaintiffs also note that the parties settled the underlying class action based, in part, on an evaluation of the likelihood of insurance coverage. Pls.' Br. at 21–22. At the time, Citizens relied on only the Statutory Violations Exclusion, so the Plaintiffs argue that Citizens's assertion of additional defenses in this suit upends the assumptions underlying the parties' settlement. *Id.*

Citizens's responses merely raise disputes of fact about prejudice. For instance, Citizens contends that the Plaintiffs are not prejudiced by its newly asserted position because, even if it had raised the Access or Disclosure Exclusion earlier, the Plaintiffs would have had to litigate the issue either way. Def.'s Reply Br. at 21–22. But a reasonable jury could find that Citizens has prejudiced the Plaintiffs by raising coverage

27

defenses in a piecemeal fashion and delaying the class's receipt of settlement payments. Citizens also argues that the Plaintiffs had full information of Citizens's coverage position for their settlement negotiations because Citizens generally reserved its rights in its initial letters to Wynndalco. Def.'s Reply Br. at 22. This might be persuasive if Citizens asserted the Access or Disclosure Exclusion before litigation, *see Grinnell Mut. Reinsurance Co. v. LaForge*, 863 N.E.2d 1132, 1141 (Ill. App. Ct. 2006) (holding that mend the hold did not apply where insurer generally reserved rights and then asserted a specific defense in its later coverage letters before litigation commenced), or even during the declaratory-judgment suit. But a reasonable jury could find that Citizens's general reservation of rights is insufficient to give the Plaintiffs notice, and thus mitigate prejudice, given Citizens's failure to raise the Access or Disclosure Exclusion until this suit. Because Citizens's arguments demonstrate that there are genuine disputes of fact relevant to mend the hold, they underscore why judgment on the pleadings is inappropriate.

### b. Waiver

The genuine disputes of fact on mend the hold are sufficient to deny Citizens's motion for judgment on the pleadings, but the Court also addresses waiver for thoroughness. "Waiver consists of either an express or implied voluntary and intentional relinquishment of a known right." *Chatham Corp. v. Dann Ins.*, 812 N.E.2d 483, 494 (Ill. App. Ct. 2004). In this context, "[t]o constitute a waiver, the words or conduct of an insurer must be inconsistent with the intention to" assert the policy exclusion on which the insurer now relies. *Id.* (cleaned up). For example, "[a] long delay in

28

asserting a policy defense or disclaimer may constitute a waiver of that defense ….” *Franklin Univ.*, 8 N.E.3d at 44. Because waiver is unilateral, “focusing on an insurer’s conduct,” the insured need not show prejudice. *Chatham*, 812 N.E.2d at 494 (cleaned up).

Here, the Plaintiffs raise a dispute of fact over whether Citizens waived the Access or Disclosure Exclusion—and other defenses to coverage—by failing to assert those defenses in its initial policy coverage letters and the declaratory-judgment suit. *See Title Indus.*, 853 F.3d at 885 (holding that waiver applied when insurer, without justification, failed to promptly assert a policy exclusion); *Franklin Univ.*, 8 N.E.3d at 44–45 (holding that insurer waived its defense where it had multiple earlier opportunities to raise the defense but did not do so). Indeed, over four years passed from the time when Citizens first denied coverage to Wynndalco in July 2020 to when Citizens first asserted the Access or Disclosure Exclusion in this suit in August 2024. *See* July and August 2020 Coverage Letters; R. 13, Def.’s Aff. Defenses ¶ 2.

Citizens responds that it did not waive the exclusion because it generally reserved its rights to assert additional defenses in its coverage letters to Wynndalco. Def.’s Reply Br. at 24. But again, the Plaintiffs have introduced evidence that Citizens believed that the Access or Disclosure Exclusion applied, *see* June 9, 2020, Coverage Analysis, yet did not assert the exclusion in its coverage letters nor in the years-long declaratory-judgment litigation, *see* July and August 2020 Coverage Letters; Citizens’s First Am. Compl. in Declaratory-Judgment Suit ¶¶ 35–41. A reasonable juror could thus find that Citizens’s bare reservation of rights is insufficient to defeat

waiver. *See Ill. Ins. Guar. Fund v. Nwidor*, 105 N.E.3d 1035, 1043 (Ill. App. Ct. 2018) ("[B]are notice of a reservation of rights is insufficient; the notice must make specific reference to the policy defense which ultimately may be asserted." (cleaned up)). So there are genuine disputes of fact about waiver that also preclude the Court from entering judgment on the pleadings in Citizens's favor.

## IV. Conclusion

Citizens's motion for reconsideration, R. 70, is granted in part and denied in part. The Plaintiffs' motion for partial summary judgment, R. 44, is denied. And the parties' cross-motions for judgment on the pleadings, R. 26; R. 44, are both denied. The parties shall confer and file a joint status report, by April 10, 2026, proposing a discovery schedule.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 28, 2026

30